OPINION OF THE COURT
Joan S. Kohout, J.
A petition was filed on May 20, 1997 by the Monroe County Department of Social Services alleging that respondents Joanne N. and James S. violated an order of adjournment in contemplation of dismissal (ACD). The respondents appeared and objected to the petition. A Law Guardian was assigned for the three children and counsel was assigned for the respondents. A trial was scheduled for July 14, 1997 at which time the petitioning agency withdrew the case against Ms. N. and proceeded against Mr. S. At the conclusion of the brief testimony offered, the Law Guardian recommended that the violation petition be sustained.
FINDINGS OF FACT
The only witness offered at the trial by the Department of Social Services was child protective caseworker Stephanie Rogers. In May 1996 Ms. Rogers had received the case concerning the children Jonathan W., Joshua W. and James S., Jr. Respondent James S. is the father of the child James, born January 12, 1991. All three children reside with their mother Joanne N. On July 23, 1996 as a disposition of a neglect case, an adjournment in contemplation of dismissal order was made in reference to both Mr. S. and Ms. N. The order was permitted to expire as to Ms. N. on July 23, 1997.
Under the ACD order the children Joshua and Jonathan were placed in their mother’s care under supervision of the Department of Social Services. Custody of James was governed *212 by a preexisting custody order between his parents, which granted "primary physical residence and full custody” to Ms. N. with liberal visitation rights for Mr. S. No restrictions were placed on Mr. S.’s access to his son. Both respondents were required to "comply with the recommendations of a substance abuse evaluation,” "engage in substance abuse treatment * * * and follow all recommendations, including undergoing a new evaluation if needed,” "cooperate with the Monroe County Department of Social Services caseworker(s),” and follow an order of protection which directed that they not "use or be under the influence of drugs or alcohol in the presence of the children.”
Apparently Mr. S. began substance abuse treatment about the time the ACD order was made, or not long thereafter, at Genesee Hospital and successfully completed the program. On January 7, 1997 Mr. S. admitted to the caseworker that he had relapsed and had been "drinking”. On February 16, 1997 Mr. S. left a voice mail message for Ms. Rogers stating that he was at St. Jerome’s Detox. She met with him at his home on February 18, 1997 at which time Mr. S. told her that he had been discharged from St. Jerome’s on February 16th with a recommendation that he go to Genesee Hospital Outpatient Phase Two. Ms. Rogers stated that she was able to confirm Mr. S.’s admission to St. Jerome’s.
By March 19, 1997 Ms. Rogers had confirmed that Mr. S. was back in treatment at Genesee Hospital. But, on May 1, 1997 she learned that he had been terminated from Phase Two and had gone back into Phase One of treatment. Mr. S. told her that he had missed too many appointments because he had to watch the three children and, therefore, had to return to Phase One. No proof was presented contrary to Mr. S.’s explanation. Ms. Rogers testified that as of the last she knew, which was about June 23, 1997, he was in treatment at Genesee.
Ms. Rogers did not testify to any instances when Mr. S. failed to cooperate with her. Indeed, it appears that he accepted her suggestions, met with her as requested and truthfully responded to her questions. She acknowledged that he followed every treatment recommendation made by the treatment providers.
It was Ms. Roger’s position that Mr. S. violated the ACD order by relapsing in January 1997 and being sent back to Phase One treatment in May 1997 because of missed appointments.
Ms. Rogers also testified to visiting with the children at school. She did not state, however, how the interviews were *213 conducted, whether they were individual or in a group or how long she spent with the children. She stated only that the children told her that dad drinks in front of them and asks them to go to the store to buy alcohol. No dates were established for when these incidents were claimed to have occurred. Ms. Rogers stated that Mr. S. had denied that he had used alcohol in front of the children. She also testified that he had always been truthful with her.
Finally, an attendance record for James, Jr., who is in kindergarten, was entered in evidence as exhibit 1. The attendance record shows two absences noted as "illegal” and a number of legal absences. No one from the school testified as to any impact these absences had on James.
No proof was submitted by respondent or the Law Guardian.
CONCLUSIONS OF LAW
Family Court Act § 1039 provides a vehicle to provide supervision and services to families without the necessity of determining whether the article 10 child protective petition can be sustained.[1] An ACD order may only be made prior to fact-finding and only with the consent of the parties. (Family Ct Act § 1039 [a].) If the respondent complies with the order, the case is automatically deemed dismissed in the furtherance of justice upon expiration. (Family Ct Act § 1039 [f|.)
Prior to expiration, the petitioner, Law Guardian or the court on its own motion may apply to restore the case to the calendar upon a showing that the respondent has "failed substantially to observe the terms and conditions of the order or to cooperate with the supervising child protective agency.” (Family Ct Act § 1039 [e].) A hearing is required to determine the issues and if the restoration request is sustained the court must determine the merits of the original child neglect or abuse petition.
The statute does not provide guidance as to the extent or nature of the hearing. Family Court Act § 1039 was amended by the Legislature in 1985 and 1990 in the wake of the Court of Appeals decision Matter of Marie B. (62 NY2d 352 [1984]), which declared the prior statutory scheme unconstitutional. Prior to 1990, section 1039 permitted an automatic finding of abuse or neglect based upon a determination that the respon *214 dent had violated the ACD order. The amended statute now requires two separate hearings: the first to determine whether a substantial violation occurred and, if the case is restored, then a plenary hearing on the original child neglect or abuse.
Interestingly, the amended statute does not mandate that the case be restored even if there is a showing of substantial violation, but instead states that the court "may restore the matter to the calendar” (Family Ct Act § 1039 [e] [emphasis added]). Thus, it would seem that the Legislature contemplated that the Family Court would review and consider all relevant information, such as whether further court intervention was required (see, Family Ct Act § 1051 [c]), or whether the children’s needs were being met.
In the case here, the Department of Social Services failed to show that Mr. S. had violated the recommendations of the treatment providers. Prior to January 1997 he satisfactorily completed his original program and when he relapsed he reentered inpatient care.[2] After attending St. Jerome’s, he recommenced out-patient treatment at Genesee Hospital as recommended. Although there may have been a delay between his release from St. Jerome’s on February 16, 1997 and his reentry into the program at Genesee Hospital, it was never established that any delay was due to his failure to cooperate. The return to Phase One of the program was done upon recommendation of the treatment provider. The fact that there had been missed appointments due to his child care commitments was never disputed by the caseworker and she testified that he had always been truthful with her. Based upon this proof, the court finds that there was no substantial violation in reference to treatment.
The petitioner further argues that the children’s statements should be considered as proof of a violation of the ordering provision that prohibited use of alcohol and drugs in the presence of the children. While there is no reason not to apply Family Court Act § 1046 (a) (iv) to this hearing and to consider the children’s hearsay statements, the court finds that there was insufficient corroboration of the statements to permit the court to make a finding of substantial violation. Moreover, the caseworker’s testimony was vague at best. She failed to indicate which child made the statements, what time frame was *215 involved or to provide a description of the interviews with the three children. Although she claimed that the children said that Mr. S. was drinking in front of them, it was not indicated what they claimed he drank. Furthermore, the statement that Mr. S. asked the children to go to the store to buy him alcohol is implausible given the ages of the youngsters. Finally, Mr. S. denied that he had consumed alcohol in front of the children, and as previously noted the caseworker found Mr. S. to be candid with her regarding his alcohol use. All of these factors tend to raise doubt as to the reliability of the children’s reports to the caseworker.
Based upon the foregoing, the court finds the proof lacking as to any substantial violation of the prohibition that Mr. S. use alcohol in front of the children.
Finally, the petitioner suggests that Mr. S. was responsible for his son’s failure to attend school. Based upon the attendance record, the court finds no attendance failure. Moreover, Mr. S. did not have physical custody of his son during the period in question; instead, physical residency of James was with his mother pursuant to the custody order between the parents.
Even if the proof presented had established a substantial violation, after a review of the relevant circumstances, the court would exercise its discretion to decline to restore this case. The three children reside with their mother who satisfactorily complied with the court order and whose neglect case has now been dismissed by operation of law. She has sole custody of the children and is, therefore, in a position to safeguard their well-being. Additionally, Mr. S. continues in treatment and has in the past voluntarily sought out appropriate help during a brief period of relapse. Rather than hide his problem, he acknowledged it and addressed it directly. This is a most positive quality that tends to support a determination that the court’s aid is no longer required. This being the case, the petition requesting restoration is dismissed. Since the ACD order has now expired, Mr. S.’s neglect case is automatically dismissed in the furtherance of justice as provided for in Family Court Act § 1039 (f).

. Since no adjudication of the facts is required, ACD orders are frequently made when allegations are weak, but the family is in agreement with services suggested by the Department of Social Services.

. It is significant that the ACD order did not prohibit Mr. S.’s use of alcohol or drugs at all times, but only prohibited use in front of the children. Had the order prohibited all use, petitioner may have been able to prove a substantial violation.